UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERION L. OLIVER,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 2:25-cv-1784 TLN AC<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the court recommends plaintiff's motion for summary judgment be GRANTED, and the Commissioner's cross-motion for summary judgment be DENIED.

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); <u>Bowen v. City of New York</u>, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); <u>Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler</u>, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

## I. PROCEDURAL BACKGROUND

Plaintiff protectively applied for disability insurance benefits and for supplemental security income on July 12, 2022. Administrative Record ("AR") 395-411.[2] The disability onset date for both applications was alleged to be May 20, 2022. Id. The applications were disapproved initially and on reconsideration. AR 128-32, 141-47. On July 23, 2024, ALJ Michael Schmitz presided over the hearing on plaintiff's challenge to the disapprovals. AR 40-75 (transcript). Plaintiff appeared with his counsel, Harvey Sackett, and testified at the hearing. AR 40, 43-62. Vocational Expert Kevin Yi also testified. AR 40, 51, 62-73. On August 2, 2024, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 17-32 (decision), 33-39 (exhibit list). On April 30, 2025, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision).

Plaintiff filed this action on June 25, 2025. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 14 (plaintiff's summary judgment motion), 20 (Commissioner's summary judgment motion), 23 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1972 and was 50 years old on the alleged disability onset date, making him a "person closely approaching advanced age" under the regulations. AR 43; see 20 C.F.R §§ 404.1563(d), 416.963(d) (same). Plaintiff has a GED and recent work experience as a commercial truck driver between 2021 and 2022. AR 477. Plaintiff also has experience as a supervisor at a hydro business from 2007-2016, and as an operator at a chemical company from 2016 to 2019. Id. Plaintiff alleged he is totally disabled due to symptoms and restrictions resulting from surgery on his right 2 fingers, mental health symptoms, and mobility limitations requiring a cane or walker. ECF No. 480.

---

[2] The AR is electronically filed at in OCR format at ECF No. 9-9.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error,

which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not,

> the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027.
>
> 2. [Step 1] he claimant has not engaged in substantial gainful activity since April 17, 2022, 2022, [*sic.*] the amended alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.)
>
> 3. [Step 2] The claimant has the following severe impairments: Arthritis of right hand, degenerative joint disease of right second and third fingers, and traumatic wounds to the right index and middle fingers; History of gunshot wounds (GSW) to right forearm and abdomen; Open fractures of right fibula and tibia and gunshot wound (GSW) right leg with residual pain and swelling; and Schizoaffective disorder, unspecified schizophrenia spectrum and other psychotic disorder; Post-traumatic stress disorder (PTSD); Cocaine use disorder; and Amphetamine use disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [Preparation for Step 4] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: He can frequently push, pull and operate hand controls with the dominant right upper extremity, and can frequently handle and finger with the right upper extremity. He can never climb ladders, ropes or scaffolds, but can frequently climb ramps and stairs, kneel, crouch and crawl. The claimant can have no more than occasional exposure to extreme cold, extreme heat, wetness, humidity, and vibrations, and must avoid all exposure to hazards such as unprotected heights. He can understand, remember and carry out

> simple instructions, but cannot perform tasks which require a specific production rate pace (such as assembly line work or an hourly production quota). He can interact occasionally with coworkers and the general public. The claimant can respond appropriately to occasional change in a routine work setting.
>
> 6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. [Step 5] The claimant was born [in 1972] and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. [Step 5, continued] The claimant has at least a high school education (20 CFR 404.1564 and 416.964).
>
> 9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a)
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 17, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))

AR 19-32. As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 32.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred because (1) the RFC finding is not supported by substantial evidence; (2) the ALJ improperly rejected his subjective testimony; and (3) the finding at Step Five is not supported by substantial evidence. ECF No. 14 at 6. Because the undersigned finds that the RFC is not supported by substantial evidence and because the RFC is essential to the Step Five finding, plaintiff's third challenge is not independently addressed.

### A. The RFC is Not Supported by Substantial Evidence

The RFC is "the most [a plaintiff] can still do despite [his] limitations and is based on all relevant evidence in the record rather than a single medical opinion or piece of evidence." 20

C.F.R. § 404.1545(a)(1). The ALJ must weigh medical records, medical and other source opinions, and a plaintiff's symptom testimony to craft the RFC. Id. § 404.1545(a)(3); see Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("[The Court] will affirm the ALJ's determination of [a plaintiff's] RFC if the ALJ applied the proper legal standard and [her] decision is supported by substantial evidence.") (citation omitted). Plaintiff contends that the RFC is not supported by substantial evidence with respect to his non-exertional limitations because "it is not clear upon what evidence the ALJ based the mental restrictions included in the residual functional capacity." ECF No. 14 at 7. The court agrees with plaintiff.

1. The ALJ's Step-Two Findings Regarding Mental Impairments and Assessed Non-Exertional Limitations

At step two of the sequential analysis the ALJ found that plaintiff has multiple severe mental impairments, including schizoaffective disorder, an unspecified schizophrenia spectrum disorder, and post-traumatic stress disorder. AR 20. The ALJ concluded that plaintiff has moderate limitations in each of the four "paragraph B" categories of work-related mental functioning, including: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. AR 21. In the RFC, the ALJ assigned the following non-exertional limitations: plaintiff "can understand, remember and carryout simple instructions, but cannot perform tasks which require a specific production rate pace (such as assembly line work or an hourly production quota). He can interact occasionally with coworkers and the general public. The claimant can respond appropriately to occasional change in a routine work setting." AR 22. The ALJ explained that these limitations "accommodate the claimant's subjective complaints to the extent that they are supported by medical evidence. There is nothing in the record that justifies any further reduction in the residual functional capacity[.]" AR 29.

2. The ALJ's Assessment of Plaintiff's Subjective Testimony and the Medical Record

In summarizing plaintiff's subjective testimony regarding mental health impairments, the ALJ recorded as follows:

////

> The claimant stated that he relives his past trauma over and over. When asked whether he sees or hears things that are not there, he stated that he does not know except to describe flashbacks. He sleeps poorly, for about two hours. He feels anxious and has mood issues. He takes medication. Weight gain is the only side effect of any medications. The claimant sees his therapist every two weeks, in person. The claimant reported "at least" a year of sobriety.

AR 23. The ALJ discounted plaintiff's subjective testimony as not fully constant with the medical evidence. Id.

In reviewing the medical evidence, in relevant part, the ALJ stated that in February of 2023, police and emergency services were called when plaintiff became uncooperative and refused to leave an acquaintance's bathroom; plaintiff reported using cocaine and methamphetamine leading up to the onset of his symptoms. AR 24. Plaintiff was hospitalized for two days for rhabdomyolysis in the setting of methamphetamine abuse. Id. In May of 2023 plaintiff sought emergency treatment with various complaints, but his behavior led the provider to suspect polysubstance abuse. AR 25. On September 22, 2023, plaintiff went to Psychiatric Emergency Services (PES) two days after losing his home, seeking treatment for paranoia about being followed. AR 25. The provider noted that plaintiff had visited in the past for psychosis associated with cocaine use, and that there was a history of issues with methamphetamines, alcohol, and cocaine. Id. Plaintiff was diagnosed with unspecified schizophrenia spectrum and other psychotic disorder, cocaine use disorder, and amphetamine use disorder, and was prescribed Xarelto, Gabapentin, and Zyprexa for unspecified psychosis and PTSD. Id.

From January 6-8, 2024, the claimant was again admitted to PES, having admitted to using meth and complaining of hearing whispers in the background. AR 26. He also admitted to inconsistent use of Zyprexa but said it does help with hearing whispers. Id. Plaintiff's condition quickly improved after he metabolized the drugs and started taking prescribed medication and was released with advice to avoid illicit substances, and to take his medication as prescribed. Id. Having considered the above medical evidence, the ALJ concluded,

> From a mental standpoint, the claimant has never engaged in regular outpatient care. He went to PES on a few occasions, usually related to cocaine or methamphetamine related symptoms. He started Zyprexa, which was helpful, but was poorly compliant. The undersigned acknowledged that homelessness, insurance issues, and

> financial issues contributed to difficulty with compliance, although no provider indicated the claimant was medically unable to comply. However, his failure to explore free or reduced fee options after being given resources detracts from the alleged severity of mental symptoms. The evidence of education history, work history, very limited mental health treatment or exams, daily activities and interactions with treating sources support a finding that he could perform work within the mental residual functional capacity above.

AR 27.

3. The ALJ's Rejection of All Non-Exertional Medical Opinions

With respect to mental limitations, the ALJ reviewed and rejected the medical opinion of State Agency physician Caruso-Radin, PsyD, who opined that the evidence does not establish any severe mental impairment. AR 28, 107; 118. The ALJ found the opinion not persuasive or supportable because, although there was no ongoing mental health treatment, there is a record of psychiatric emergency services ("PES") visits and prescribed medication, which support a finding that there are mental limitations. AR 28.

The only other medical opinions related to mental functioning were submitted by plaintiff's treating physician, Dr. Kahn. AR 1177. On the one "check the box" form, Dr. Khan checked the box for "serious mental illness" but did not offer any supportive function by function assessment. Id. Dr. Kahn also provided a multi-page assessment dated December 2023, using checkboxes to rate plaintiff's functioning in several areas, and including some written notes. AR 29, 1178-1181. On this form Dr. Kahn endorsed, most notably, the following marked limitations: ability to understand/remember detailed instructions; ability to carry out detailed instructions; ability to complete normal workday/week without interruption from psychological based symptoms; ability to interact appropriately with general public; and ability to accept instructions and respond to criticism from supervisors. Id. Dr. Kahn endorsed the following extreme limitations: ability to maintain attention/concentration for extended periods; ability to perform activities within schedule/maintain regular attendance/be punctual within customary tolerances; ability to work in coordination with/proximity to otherers without being distracted by them; and ability to get along with coworkers. Id. The ALJ rejected Dr. Khan's assessment in its entirety, concluding it was not well supported by the record. AR 29.

4. The ALJ Failed to Support the Non-Exertional Limitations in the RFC

An RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p, 61 Fed. Reg. at 34478. It is the province of the ALJ to determine a plaintiff's RFC. 20 C.F.R. § 404.1546(c); Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

Here, the ALJ was presented with two medical opinions that were in direct and extreme opposition to one another: a state agency opinion assessing no mental health impairment at all, and a treating physician opinion assessing multiple marked and extreme mental health symptoms and limitations. AR 1178-1181. The ALJ rejected both opinions in their entirety. The ALJ was also presented with a medical record, discussed above, that documented sporadic but significant instances of mental health crisis and a history of polysubstance abuse. Because the ALJ rejected all relevant opinion testimony and because the medical record itself is highly variable, the undersigned can find no clear path from the record before the ALJ to the specific non-exertional limitations the ALJ included in the RFC. The ALJ himself provided no roadmap for the court to follow.

A review of the medical record and the highly contrasting medical opinion testimony makes clear that in this case, the ALJ had a duty to further develop the record as to plaintiff's mental health limitations. See Ford v. Saul, 950 F.3d 1141, 1156 (9th Cir. 2020) (when there is "ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," the ALJ has a duty to develop the record) (quoting Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001)). "Indeed, Ninth Circuit courts have found that '[b]arring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decisions." Copeland v. Bisignano, No. 1:23-CV-00378-SKO, 2026 WL 1243431, at *5 (E.D. Cal. May 6, 2026) (quoting Bradford v. Comm'r of Soc. Sec. Admin., No. CV-21-00232-, 2022 WL 4538569, at *5 (D. Ariz. Aug. 18, 2022); Walker v. Comm'r of Soc. Sec., Case No. 2:22-cv-01871-EJY, 2024 WL 64784, at *6 (D. Nev. Jan. 4,

2024) ("While the ALJ 'can pick and choose between opinions expressed by the experts,' when an ALJ decides severity or residual functional capacity 'without the support of any of the medical opinion evidence,' this is error.") (quoting Holtan v. Kijakazi, 2:22-cv-01222-VCF, 2023 WL 2424648, at *3 (D. Nev. Mar. 9, 2023)). This is particularly true where, as here, the medical record itself is inconsistent.

The record here was both inadequate and ambiguous as to plaintiff's mental health limitations. See Ford, 950 F.3d at 1156. Rather than assign a few minimal non-exertional limitations in the RFC, unmoored from any medical opinion, medical record, or other testimony, the ALJ was required to develop the record, either by ordering a consultative examination or through some other method. Because the RFC is unsupported by substantial evidence, plaintiff's motion for summary judgment must be granted.

B. The ALJ Improperly Considered Plaintiff's Testimony

The ALJ improperly rejected plaintiff's subjective testimony regarding his mental health symptoms because it is not clear what portions of plaintiff's testimony were credited and what was rejected. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.... In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. Id. (internal citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." Id. (internal citations omitted).

Here, as with the RFC, the rejection of plaintiff's testimony is inadequately supported, particularly regarding mental impairments. The ALJ notes that plaintiff testified to repeated flashbacks, poor sleep, anxiety, and mood issues. AR 23. The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged

symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 23. The ALJ then discussed the history of mental health treatment in the record, as discussed above, and rejected all related opinion testimony. He went on to conclude that the "listed residual functional capacity assessment accommodates the claimant's subjective complaints to the extent that they are supported by medical evidence" without any explanation as to how he arrived at the assigned non-exertional limitations, and how plaintiff's testimony was considered with respect to the limitations assigned. The ALJ's treatment of plaintiff's subjective mental health testimony is accordingly unsupported.

## VII. RECOMMENDATION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 14), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is DENIED; and

3. The case be REMANDED to the Commissioner for further proceedings consistent with these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order.

////

////

////

////

Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: July 29, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE